56 CCPA

**SAMUEL SHAPIRO & CO., Inc.,**
Appellant,

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5297.**

United States Court of Customs
and Patent Appeals.

Nov. 27, 1968.

David H. Fishman, Baltimore, Md., Allerton deC. Tompkins, New York City, for appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Andrew P. Vance, New York City, Chief, Customs Section, Arthur H. Steinberg, New York City, Carl Eardley, Washington, D. C., for the United States.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALDWIN, Judges.

RICH, Judge.

The issue involved in this case is whether a nominal consignee who has voluntarily incurred liability for duties, including increased duties, under a consumption entry bond in order to obtain release of the goods from customs custody, may be released from the liability for the increased duty without obtaining a superseding bond of the actual owner. The Customs Court, Third Division, 59 Cust.Ct. 115, C.D. 3090, 271 F.Supp. 971, found the nominal consignee to be liable. We affirm that decision.

Appellant, a customhouse broker, was nominal consignee of a shipment of rifles [1] through the port of Baltimore on

---

1. Appellant's brief refers to the goods as "rifle parts" and mentions an earlier decision of this court in Samuel Shapiro and Co. v. United States, 51 CCPA 89, C.A.D. 842 (1964). However, the goods identified in consumption entry #3447, involved herein, comprise 5 cases of *rifles* shipped from Otterup, Denmark

October 22, 1956. Appellant filed consumption entry #3447 showing the broker to be the nominal consignee and Sharpe and Hart, Inc. to be the actual owner. The rifles were released from customs custody on October 29, 1956 under appellant's consumption entry bond [2] on file with the collector. By the bond [3] appellant "voluntarily undertakes and agrees" to pay duties found due on the shipment "notwithstanding section 485 (d),[4] Tariff Act of 1930." On October 25, 1956, as authorized by section 485 (d), Tariff Act of 1930, a timely owner's declaration was filed, showing that Sharpe and Hart, Inc. was the actual owner. However, no superseding bond of the actual owner, as required by Customs Regulation 8.18(d),[5] was filed with

on 9–26–56 to Baltimore on 10–22–56. The goods involved in the earlier *Shapiro* case, supra, comprised "100 actions cal. 222 Rem. M. 54" shipped from Otterup some two months earlier on 7–21–56 to Baltimore on 8–6–56.

2. Appellant maintains a consumption entry bond on an annual basis to expedite release of imported merchandise from customs custody pursuant to section 499, Tariff Act of 1930, as amended, 19 U.S.C. § 1499 which, as far as is pertinent, provides as follows:

Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except under such bond or other security as may be prescribed by the Secretary of the Treasury to assure compliance with all applicable laws, regulations, and instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. * * *

3. Under condition 1 of its consumption entry term bond, appellant voluntarily agreed that:

The above-bounden principal, in consideration of the release of all or any part of such shipments as may be charged against this bond before the full amount of duties and taxes imposed upon or by reason of importation has been finally determined, and notwithstanding section 485(d), Tariff Act of 1930, or any other provisions of law, voluntarily undertakes and agrees to pay any and all such duties and taxes found to be due on each entry in question, but not in excess of the amount of this bond, upon condition that no other provision of this bond shall be invoked for the purpose of

enforcing the collection of such duties and taxes and upon the further condition that this obligation to pay any and all such duties and taxes found to be due on the shipment (not exceeding the amount of this bond) shall become null and void and of no force and effect as to any entry on and after the date on which the above-bounden principal files with the collector in the manner and within the time prescribed by the regulations a superseding bond on customs Form 7601 of the owner whose declaration has been filed in accordance with the provisions of section 485(d), in which bond the owner undertakes and agrees to pay any and all such duties and taxes found due on the shipment covered by the abovementioned entry;

4. Section 485, Tariff Act of 1930, 19 U.S.C. § 1485, reads in relevant part, as follows:

(d) A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee. (46 Stat. 724)

5. Customs Regulations, Section 8.18(d):

A consignee in whose name an entry is made who desires under the provisions of section 485(d), Tariff Act of 1930, to be relieved from direct liability for the payment of increased and additional duties shall file a declaration of the actual owner of the merchandise on customs Form 3347. If the consignee desires to be relieved also from the liability for the payment of such duties voluntarily assumed by him in the single-entry bond which he filed

the owner's declaration. The entry was liquidated on July 19, 1965, and increased duties of $165.00 were found to be due. The Collector of Customs at Baltimore made demand upon appellant-broker, Samuel Shapiro and Co., Inc., for payment of these duties, and taking the position that the nominal consignee had not been released from liability on its consumption entry bond made no attempt to collect the increased duties from the actual owner, Sharpe and Hart, Inc., but charged them against appellant's consumption entry bond. The increased duties were paid by appellant under protest and this raises the issue here on appeal.

Before discussing the issues here argued by appellant, a brief review of the general procedural practices which give rise to the present controversy will assist in an understanding of this decision. When imported goods are taken into customs custody, the government acquires physical possession of the goods as its security for any duty assessed on them. However, to expedite the flow of commerce, goods are customarily released to the broker as nominal consignee, under a consumption entry bond. The government, to protect its revenue on such an importation, requires that the broker's consumption entry bond provide the se-

curity theretofore provided by possession of the goods and that this bond of the nominal consignee will provide security covering all the duties assessed, including any increased duties. So long as any duties remain unpaid the government continues to require security for their payment. Thus, when the nominal consignee seeks under the provisions of section 485(d) of the Tariff Act of 1930 to relieve himself of the security obligations of his consumption entry bond, Customs Regulation 8.18(d) requires that an equivalent security be provided in the form of a superseding bond of the actual owner.

As previously noted, in the specific situation here, no substitute security in the form of a superseding bond of the actual owner has been filed. However, the nominal consignee seeks to evade the liability for the increased duty here assessed and charge against his consumption entry bond, taking the position that the Secretary of the Treasury was not authorized to require the superseding bond from the actual owner before releasing the nominal consignee from the extra duties here assessed.

██ It seems to us this raises an immaterial issue since the appellant incurred the liability for the increased duties *voluntarily* [6] as consideration for the

---

in connection with the entry or in his term bond against which the entry was charged, he shall file with the collector of customs within 90 days from the date of entry a superseding bond on customs Form 7601 of the actual owner whose declaration on customs Form 3347 has been filed in accordance with section 485(d) and the regulations in this part. The filing of the owner's declaration and of the superseding bond by the nominal consignee is optional and no bond shall be required for the production of either. Neither the owner's declaration nor the superseding bond shall be accepted unless filed by the nominal consignee or his duly authorized agent. A nonresident owner's declaration shall not be accepted as a compliance with section 485(d) unless there is filed therewith a bond of such owner on customs Form 7551 or 7553, with a resident corporate surety there-

on. (T.D. 52403, 85 Treas.Dec. 33 (1950)).

6. Appellant argues that the condition of the consumption entry bond which binds the principal "notwithstanding section 485(d), Tariff Act of 1930," is imposed by duress. The claimed duress is supposed to arise because as a matter of actual business practice, it is almost always necessary for the broker to file the consumption entry bond. We think the fallacy of this argument is adequately disposed of in the following portion of appellee's brief:

Appellant contends in its brief * * * that the first condition of its consumption entry bond * * * was not "voluntary," but "was imposed upon appellant against its will and under duress." However, appellant, for reasons of its own, voluntarily chose to make entry in its own name as importer of record rather than in the name

release of the goods under its consumption entry bond. Thus, appellant's case appears to be little more than a request that we reform this initial contract to relieve it of its voluntarily incurred, contractual liabilities under its consumption entry bond.

■ As to the other matters raised in appellant's brief, these seem to be without merit. Thus, appellant argues that Congress, in enacting section 485 (d), intended that a nominal consignee should be relieved from liability for additional and increased duty once he has completed the three-step process set forth in this section of (1) declaring he is not the actual owner on entry, (2) furnishing the name and address of the actual owner, and (3) furnishing an owner's declaration within 90 days. Appellant argues that the further requirement for a superseding bond, as provided in Customs Regulation 8.18(d), is contrary to the intent of Congress and thus falls outside the authority delegated to the Secretary of the Treasury.

The lower court correctly found that the Secretary of the Treasury did have a sufficient delegation of authority to require a superseding bond of the actual owner either under that portion of section 485(d) which refers to "* * * such regulations as the Secretary of the Treasury may prescribe," or under section 623.[7] Further, we find nothing convincing in the legislative history[8] per-

---

, of the ultimate consignee, Sharpe & Hart, Inc., which it could easily have done if it did not wish to incur liability for increased duties under its term bond to obtain release of the goods from customs custody under section 499 of the Tariff Act of 1930, as amended. In United States v. Mora, 97 U.S. 413, 421, [24 L.Ed. 1013] (1878), Mr. Justice Bradley said: "If the shipper chose to give the bond in order to get his goods cleared, it was a *voluntary act on his part; and what ground has he or his sureties to complain?*" * * *

7. Section 623, as amended, (19 U.S.C. § 1623), so far as is pertinent, provides as follows:

(a) In any case in which bond or other security is not specifically required by law, the Secretary of the Treasury may by regulation or specific instruction require, or authorize collectors of customs to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury or the Customs Service may be authorized to enforce.

(b) Whenever a bond is required or authorized by a law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, the Secretary of the Treasury may—

(1) Except as otherwise specifically provided by law, prescribe the conditions and form of such bond * * *

* * * * *

(d) No condition in any bond taken to assure compliance with any law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce shall be held invalid on the ground that such condition is not specified in the law, regulation, or instruction authorizing or requiring the taking of such bond.

8. Appellant in his brief draws our attention to the following portion from the comments of the Conference Committee, H.R.Rep.No.1326, 71st Cong., 2nd Sess. (April 28, 1930) at p. 110:

Under existing law and the House Bill, a *consignee is not liable for any additional* [or] *increased duties if he files the so-called owner's declaration.* The Senate amendments provide in addition that the consignee shall not be liable for any other obligation or liability stipulated in any bond given at the time of entry if he files a supplemental bond of the owner conditioned that he will assume the liability of the consignee under the latter's bond; *and the Senate recedes.* [Emphasis added.]

However, it is noted that the extract quoted refers in its first sentence to "additional [or] increased duties" and in its second sentence (the one referring to the proposed supplemental bond) to the consignee's liability for "* * * *any other* obligation or liability." Thus, it is not even clear from the extract relied upon by appellant whether the proposed Senate amendment was directed to

taining to section 485 of the Tariff Act of 1930, 19 U.S.C. § 1485, to indicate the contrary.

Appellant also has referred to Lagerloef Trading Co. v. United States, 63 Treas.Dec. 582, T.D. 46288 (1933), but we find it to be of little relevance[9] here in view of the express statutory exemption there involved and we agree with the Customs Court that it:

> * * * involved an express statutory exception from the power of the Secretary of the Treasury to require a bond in cases where a finding of dumping as provided in the Antidumping Act of 1921 had been made. No express statutory exception is applicable to the facts in the case before the court. The other cases cited by plaintiff which were decided prior to 1950 do not involve the Customs Regulation, 8.18(d), in issue which was not promulgated until February 8, 1950, and such cases state the law in the absence of the regulation providing for a superseding bond.

> The cases cited by the plaintiff which were decided after 1950 are not cases in which the power of the Secretary of the Treasury to require a superseding bond by regulation was questioned. In substance, however, such power was recognized in the cases. * * *

Thus, to summarize, appellant has voluntarily incurred a liability for the increased duties on its consumption entry bond and has not met all the conditions necessary for it to be freed of this liability in the manner permitted by section 485(d), Tariff Act, and Customs Regulation 8.18(d). For these reasons, the judgment of the Customs Court is affirmed.

*Affirmed.*

SMITH, J., participated in the hearing of this case but died before a decision was reached.

---

a superseding bond for relieving a consignee from liability for the "increased duties" (as here) or for relieving him from some unspecified liability other than for increased duties. Furthermore, the extract does not indicate why the proposed amendment never saw the light of day. Maybe it was thought there was already adequate power to require such a bond under section 623. Thus, whatever the extract may mean, it is clear that it is not sufficiently direct and unambiguous to show an intent of Congress contrary to that plainly expressed in the words of section 485(d) and 623(a) as finally enacted.

9. Appellee distinguishes the *Lagerloef* case by noting that section 651 of the Tariff Act of 1930 excepts from its provisions the Antidumping Act of 1921 which was involved in *Lagerloef* and that section 208 of the Antidumping Act made an express exception to the particular bond requirement which formed the subject of the *Lagerloef* controversy.