**ALLEN FORWARDING CO., a/c Liberty Fabrics of New York, Inc.**

v.

**UNITED STATES.**

**C.D. 4337; Port of Philadelphia, Court No. 67/68728–98267 on yarn.**

United States Customs Court.
March 3, 1972.

Rode & Qualey, New York City (William E. Melahn, New York City, of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Herbert P. Larsen, New York City, trial atty.), for defendant.

MALETZ, Judge:

This is a motion by plaintiff for summary judgment pursuant to rule 8.2. Involved is the question as to the proper duty assessment on an importation manufactured by Farbenfabriken Bayer A. G. (Bayer) of West Germany that was described in the entry papers as "Perlon (All Nylon) off-grade filament yarn."

The imported merchandise was assessed by the government under paragraph 1301 of the Tariff Act of 1930, as modified by T.D. 54108, as:

> Yarns of rayon or other synthetic textile, not specially provided for, singles, weighing less than 150 deniers per length of 450 meters, and not having more than 20 turns twist per inch ........................22½% ad val., but not less than 25¢ per lb.

Plaintiff claims that the import is properly classifiable under the same paragraph as:

> Filaments of rayon or other synthetic textile, not specially provided for:
>
> \* \* \* \* \* \* \* \* \* \*
>
> Grouped:
>
> \* \* \* \* \* \* \* \* \* \*
>
> Weighing less than 150 deniers per length of 450 meters ....................................21% ad val., but not less than 17¢ per lb.

---

The issue in this setting is whether the imported merchandise is classifiable as "yarn" or "filament." As to this, plaintiff claims that there is no genuine factual dispute that the imported merchandise consists of Perlon off-grade filament yarn which is the same in all material respects as the Perlon off-grade filament yarn that was involved in Wedemann & Godknecht, Inc., a/c Burlington Industries, Inc., et al. v. United States, 59 Cust.Ct. 475, C.D. 3199, 275 F.Supp. 1017 (1967), and held to be classifiable as filaments and not as yarn. Plaintiff adds that on the basis of *stare decisis, Wedemann* is dispositive of the present controversy. Defendant, on the other hand, denies that the imported merchandise is the same as the Perlon off-grade filament yarn involved in *Wedemann* and claims that a genuine factual issue exists on this score, thus precluding summary judgment.

Our starting point in considering the present controversy is Geo. H. McFadden & Bros., Inc. v. United States, 50 Cust.Ct. 133, C.D. 2401 (1963), which involved the same issue as that before us here. There, the court held that the off-grade Perlon manufactured by Bayer was dutiable at the lower rate as filaments rather than yarn. According to the court, "in order for an article to be a yarn, it must be prepared for or suitable for use in weaving, knitting, or otherwise suitable to form a textile fabric." *Id.* at 137.[1] Measured by this test the court concluded that the imported off-grade Perlon did not fall into this category since the record established that it "is not suitable in its present condition, without further processing, to be manufactured into textile fabric." *Ibid.*

Following *McFadden,* the Commissioner of Customs took the position that it was believed that evidence could be obtained to support the government's position that off-grade Perlon is used in textile applications without further processing; that for that reason, it was proposed to retry the issue; and that pending a new ruling by the court, the deci-

---

1. "Suitability, in the tariff sense," [the court said] "means actually, practically, and commercially fit." *Ibid.*

sion in *McFadden* would be limited to the merchandise which was the subject of the protest before the court. T.D. 55949 (1963).

As proposed by the Commissioner, the issue was retried in *Wedemann, supra* (59 Cust.Ct. 475, 275 F.Supp. 1017). But *again* the court held—as it did in *McFadden*—that the off-grade Perlon manufactured by Bayer was not suitable for use in the manufacture of textiles without further processing and that it was therefore classifiable as filaments rather than yarn.[2]

This brings us to the question in the present case—whether or not there is a genuine factual dispute that the imported merchandise in the present case is the same in all material respects as the off-grade Perlon involved in *Wedemann*.[3] On this aspect and in support of its motion for summary judgment, plaintiff has included the sworn testimony taken by means of a commission of Dr. Robert Ernst Schnegg of Dormagen, Germany, the manager and supervising chemist of the Bayer plant which produced the imported merchandise.[4] In response to interrogatories and cross-interrogatories, he testified under oath to the effect that he had occupied that position since 1953; that his duties consisted of supervising the production of Bayer Perlon; that he was personally familiar with the imported merchandise since he had been supervising its production since 1953; that records concerning merchandise described as Perlon off-grade filament yarn were kept under his personal supervision; that based on his personal knowledge, off-grade Perlon in contrast to first-quality Perlon had a number of specified defects; that the imported merchandise was produced in the same manner as the off-grade Perlon which was the subject of the *Wedemann* case; that the criteria for designation as "off-grade" had not changed during the period in question; and that the present imported merchandise was the same as the off-grade Perlon involved in *Wedemann*.

Manifestly, Dr. Schnegg's testimony was in compliance with our rule 8.2(f) since it was based on his personal knowledge; set forth such facts as would be admissible in evidence; and showed affirmatively that the witness was competent to testify to the matters stated therein. As for the defendant, it admitted in its answer to the complaint all the elements of plaintiff's case, except for a denial that the present imported merchandise is the same as the off-grade Perlon involved in *Wedemann*. In addition, defendant has filed a memorandum opposing summary judgment in which it reiterates its denial that the merchandise is the same as that in *Wedemann*. Absent, however, from defendant's opposition is any affidavit, deposition, admission, or any other document setting forth specific facts showing that there is a genuine issue for trial. In other words, defendant has in its pleading and memorandum simply rested

2. Subsequently, a stipulation covering the same merchandise from Bayer was entered into upholding plaintiff's claim. See Wedemann & Godknecht, Inc. v. United States, 63 Cust.Ct. 745, P69/393 (1969). However, according to the affidavit of plaintiff's attorney, subsequent attempts to stipulate additional importations have been unsuccessful.

3. Defendant also contends that a genuine factual issue exists as to whether the present imported merchandise was suitable in its imported condition for manufacture into textile fabrics without further processing. However, the court has already determined in *Wedemann* (as well as in *McFadden*) that the off-grade Perlon there involved was not suitable in its condition as imported to be manufactured into textile fabrics without further processing. Thus, if plaintiff proves that the goods here are the same as in *Wedemann*, it will have *ipso facto* disproved these contentions of defendant. Therefore, to repeat, the issue presented by the pending motion is limited to whether the present imported merchandise is the same as the off-grade Perlon involved in *Wedemann* and whether a triable issue of fact exists as to that question.

4. The same Dr. Schnegg previously testified under a commission in both the *McFadden* and *Wedemann* cases.

upon a mere denial that the present importation is the same as that in *Wedemann* and stated that a triable issue exists.

It is against this background that we now turn to rule 8.2(d) which provides that summary "[j]udgment shall be rendered in favor of the party entitled thereto as a matter of law, if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." As we have seen, defendant has presented no facts by affidavit or otherwise showing that there is a genuine triable issue on the question as to whether the goods before us here are the same as those in *Wedemann*; instead, it has merely denied the allegation and asserted that a triable issue exists. But this is scarcely sufficient to create a genuine factual issue. As stated in Bruce Construction Corp. v. United States, 242 F.2d 873, 875 (5th Cir. 1957):

> * * * [W]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and, of course, he does not do that by mere denial or holding back of evidence.

 It is to be noted that a former line of cases in the Third Circuit [5] held that a pleading allegation in itself creates a factual issue notwithstanding the content of contrary affidavits. However, this was changed in 1963 by an amendment to rule 56 of the Federal Rules of Civil Procedure. In turn, the language of that amendment was adopted in toto in our court rule 8.2(f) on summary judgment which reads as follows:

> * * * When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere alle-*

*gations or denials of his pleading, but his response,* by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, will be entered against him. [Emphasis added.]

This rule provision is well grounded in light of actual practice. For an opposing party will almost invariably in his answering memorandum deny a material fact of which the movant has offered proof. See Siegel, Practice Commentaries, Rule 3212, CPLR at 426 (McKinney 1970). Indeed, "the whole purpose of the summary judgment procedure would be defeated if a case could be forced to trial by a mere assertion that an issue exists, without any showing of evidence." Wright § 1235 at p. 141. "[A]n opposing party, who has no countervailing evidence and who cannot show that any will be available at the trial, [is not] entitled to a denial of the motion for summary judgment on the basis of a hope that such evidence will develop at the trial." 6 Moore's Federal Practice § 56.15 [3] (2d ed. 1971). See also *id.* §§ 56.11 [3], 56.22 [2]. Thus the failure by defendant to proffer specific facts in opposition by way of an affidavit, deposition, admission or otherwise requires that plaintiff's unrefuted sworn testimony under the commission be accepted as true. Wright § 1235 at p. 146, and cases cited. On this phase, what was said by this court (per Judge Newman) in Weather-Rite Sportswear Co., Inc. v. United States, 62 Cust.Ct. 373, 376–77, C.D. 3774, 298 F.Supp. 508, 510 (1969), is particularly relevant here:

> * * * Quite apart from the failure (advisedly or strategically) to submit any affidavit or exhibit in opposition, the defendant's effort to discuss some meagre "factual" opposition in its brief * * * is patently inappropriate, inapplicable, and inadequate.[6]

5. See 3 Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1958) (hereafter referred to as "Wright").

6. The court was unable to grant summary judgment in *Weather-Rite* in the absence of a specific statute or rule

In summary, it is apparent that defendant's pleading and memorandum on the motion—consisting as they do of a mere denial of the specific facts presented by plaintiff—are not sufficient to raise a triable issue of fact. Hence, on the basis of the present record, the conclusion is inescapable (1) that there is no genuine issue of fact for trial; and (2) that the imported merchandise in issue here is the same in all material respects as the off-grade Perlon involved in *Wedemann*.

Further, defendant has failed to show, nor do we find, error in the prior *Wedemann* decision. That being the situation, *stare decisis* is applicable. As the court stated in United States v. Dodge & Olcott, Inc., 47 CCPA 100, 103, C.A.D. 737 (1960):

> While we always are open to consider all proper and pertinent matters which bear upon the issue of possible error in an earlier decision, such matters when presented must be clear and convincing. It is unfair both to the courts and to the parties litigant that there be a readjudication of issues previously determined except upon a clear and convincing showing of error. This requirement is not satisfied by a reargument of the former issues on the same or a merely cumulative record. We are unwilling to find error in a prior decision where, as here, the only reason advanced is that the party asserting the error does not agree with our prior decision.

Pertinent also is the following comment in United States v. Mercantil Distribuidora, S.A., et al., 45 CCPA 20, 23–24, C.A.D. 667 (1957):

> * * * The rule of *stare decisis,* sometimes known by another Latin phrase meaning "not to disturb what is settled," is applicable here too. The public policy of putting an end to litigation and of not reopening questions which have been decided is a sound one, subject only to the qualification that *clear* error should not be perpetu-

ated. Courts should maintain an open mind and give thoughtful consideration to sincere arguments that they should reverse themselves. But it must be remembered that when they do this they unsettle the law and add to the turmoil of this world, which already has enough. Hence sound policy dictates that prior decisions shall stand until the court is *convinced* they are wrong. Many appeals involve close questions on which men may reasonably differ and in such cases we feel that the statement of Mr. Justice Brewer quoted by appellees from Hartranft v. Meyer, 149 U.S. 544, 547 [13 S.Ct. 982, 37 L.Ed. 840] [1893], that "A change in the personnel of a court should not mean a shift in the law" is apt. [Emphasis in original.]

See also e. g., Prescolite Mfgr. Corp., et al. v. United States, 63 Cust.Ct. 228, C. D. 3900 (1969).

Twice before, the importers have had to litigate the dutiable status of off-grade Perlon filament yarn. They were successful in *McFadden* as they later were in *Wedemann* despite five additional witnesses produced by the government. And, as we have seen, beyond a bare denial there has been no effort by the government through affidavit, deposition or otherwise to contradict the sworn testimony by plaintiff's witness that the goods here involved are the same as those in the previous litigation. In this context, bearing repetition here is what our appellate court said in Manca, Inc. v. United States, 47 CCPA 103, 105, C.A.D. 738 (1960):

> * * * On principles of *stare decisis* it is controlling * * * unless the * * * [government] can show that the decision was clearly erroneous or that the imported merchandise here involved is not the same in kind. In our judgment it has failed to do either.

Plaintiff's motion for summary judgment is granted.

allowing this remedy. Such a remedy has been provided in the 1970 revision

of the court's rules under which the present motion is brought.